STATE OF IOWA v. JOHN FISHER, THOMAS FISHER and
GEORGE MEYERS, JOHN FISHER, Appellant.

**Larceny:** EVIDENCE. In a prosecution for larceny, where defendant
was allowed to show all that took place in the room where he ob-
tained the money, and the manner in which he obtained possession
of it, he cannot complain of the exclusion of evidence of matters
occurring after the alleged larceny which was immaterial or im-
proper cross-examination.

SAME. Prosecutor, a country boy, met defendant casually on the
train. Both got off at the same place, and defendant promised to
take · prosecutor to a ticket broker, where he could purchase a
cheap ticket to continue his journey They went first to a saloon,
then to the broker's office, which was not open, and then to a gam-
bling house. Defendant had been engaged in working around
saloons and gambling houses. While in the gambling house
defendant asked prosecutor to loan him a quarter, and then
snatched his pocketbook. Prosecutor protested, but defendant
told him not to make a fool of himself, that he would get his
money back. *Held*, sufficient to sustain a conviction for larceny
from the person.

INSTRUCTIONS. In a prosecution for larceny where defendant claimed
he obtained the money in question from prosecutor with his con-
sent, defendant cannot complain that no instructions were given
along his line of defense, where the court instructed that, to con-
vict, the jury must find that defendant took the money unlawfully
and feloniously, with intent to convert it to his own use, and per-
manently deprive prosecutor of his money without his consent.

INDICTMENT: *Money.* An indictment charging defendant with the
larceny of "$22.50 in lawful money of the United States, of the
value of $22.50," sufficiently describes the money alleged to have
been stolen, without an averment that a more particular descrip-
tion was to the grand jurors unknown, under Code, sections 5280,
5289, providing that an indictment must contain a statement of
the facts constituting the offense in ordinary and concise lan-
guage; and section 5282, directing the indictment to be direct and
certain as regards the offense charged and the circumstances con-
stituting it; and section 5287, providing that words used in an
indictment must be construed in their common acceptation; and
section 5290, providing that no indictment is insufficient, nor can
the judgment thereon be affected, by reason of any "other matter

which was formerly admitted a defect or imperfection, but which does not tend to prejudice the substantial rights of the defendant upon the merits;" and section 5462, providing that on appeals in criminal cases "the supreme court must examine the record without regard to technical errors or defects which do not affect the substantial rights of the parties."

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, DECEMBER 14, 1898.

THE defendants were jointly indicted for the crime of larceny of twenty-two dollars and fifty cents in money from the person of John Cullinan. The defendant John Fisher pleaded not guilty, and was separately tried, convicted, and judgment of imprisonment in the penitentiary for two years and for costs rendered against him, from which he appeals.— *Affirmed.*

*T. F. Bevington* for appellant.

*Milton Remley,* Attorney General, *Jesse A. Miller* and *J. W. Hallam* for the State.

GIVEN, J.—I. The testimony on behalf of the state tends to show that John Cullinan, aged 21 years, and with little experience in the ways of city life, left his home on a farm near Independence, Iowa, for Cripple Creek, Colo., where he had brothers in business, having a passage ticket as far as Sioux City. At Ft. Dodge, defendant, a stranger to Cullinan, came on the train, and approached Cullinan. They became acquainted, and rode together to Sioux City, where they arrived early in the morning. During the ride, defendant learned by inquiries where Cullinan was going, and that he was only ticketed to Sioux City, whereupon he informed Cullinan that he could take him to a broker in the city, where he could buy a ticket at a discount of twenty cents on the dollar. On arriving at Sioux City, where Cullinan was a stranger, defendant took him to a saloon,

then to the broker's office, which was not open, and then to a gambling house. Cullinan testifies that; while in the gambling room, defendant introduced him to his brother, Tom Fisher. "Then he asked me if I had change for a quarter, or if I would loan him a quarter. I put my hand in my pocketbook, and, as I did so, he snatched it. I did not give him the pocketbook with the money in it. He walked over to the table, turned the pocketbook upside down, and stuck the twenty dollar bill in his pocket. Two dollars and fifty cents dropped out. I think it was twenty-two dollars and fifty cents altogether,—a twenty dollar bill and two dollars and fifty cents in silver. He put the twenty dollar bill in his pants pocket. I told him to give me back my money. He said not to make a damn fool of myself, and I would get my money all right. He put the two dollars and fifty cents on the 36, I think. I don't know whether he won or lost. I don't know whether the money changed hands. Then he went into the back room, and these other fellows, Tom Fisher and George Meyers, followed him. They were there when he went up. I followed them back, and told them I wanted my money. He said, 'We will go and see about that ticket right away.' He came out, and went down the street. I did not do any playing up there. He said, when we got to this saloon, he would pay me that money. When we got down there, I asked him for it, and he said: 'Don't make such a fool of yourself. Come and have a drink with me.' I told him all I wanted was my money, and I said, 'If you don't give it to me, there will be some fun.' Just then Tom Fisher and Meyers came in. Tom put his hand in his pocket, pulled out his knife, and said, 'I will cut your damn throat.' The knife was open. I stepped around the stove, and, as I did so, they came at me. John Fisher hit me over the eye, and Myers hit me on the breast. Tom hit me on the nose. There is a scar there now. Then John Fisher and Meyers went out. I followed them. They went into an alley, and said, if I would come back, they would give me the money. I went back, and they went up to this back room again, in the same building. I followed them. They tried

to bolt the door. I shoved it in. Just then Policeman Olson came. He arrested Tom Fisher. John Fisher and Myers went out. I guess Myers was arrested in a gambling house. The total amount the defendant took from me was twenty-two dollars and seventy-five cents. They never paid me back, nor offered to. This money was taken from me here in Sioux City." The testimony of the defendant shows that he was a young man of twenty-one, engaged in working around saloons and gambling houses, and is substantially the same as that of Cullinan as to what was said and done prior to going into the gambling house, except as to Cullinan's drinking. Tom Fisher, George Meyers, and Harry Baker were present when Cullinan and defendant came into the gambling room. Defendant says he got to playing, and lost what money he had; that Meyers handed him some money to play; that he won, and gave Meyers his half. "Next, I got some money from John Cullinan, and played the wheel. I got twenty-two dollars and fifty cents from him. He said he would divide the money he won. The table played on was about the same size as the table here. The dealer was standing behind the table, right in the middle. I was standing at the south end of the table, and Cullinan at the corner. We were standing at each corner at the end of the table when he took out his pocketbook. The table is about two and a half or three feet wide. When he handed me his pocketbook, I emptied the money out on the table in front of me, and handed the pocketbook back to him. He put it back in his pocket. I played roulette with the money. Cullinan stood all of this time at the end of the table. The proprietor of the gambling house was there, and four or five others. Cullinan made no objection to my playing this money, not a word. I won sixteen dollars there. Then we had a few drinks, and then went down to the ticket man,—to Hattenbach's. Cullinan did not go into the back room where I was, and ask for the money, as he testified. I had no conversation with him back there. When we went down to Hattenbach's to get the ticket, they were not open. Then we went down to Orton's saloon. We

had some drinks in there, and I offered him half of this
money, and he would not take it. He wanted it all. He
offered me five dollars for winning. We were all drinking
whisky there,—Cullinan with us. We were all somewhat
intoxicated there at that time. I noticed Cullinan in a sort
of drunken stupor. I offered him his money there at that
time, and part of the winnings." Defendant testifies that,
"after the row came up I left the money there for Cullinan
with Ed Burk. It was afterwards turned over to Billy Nead,
and then I turned it over to Mr. Foley." Harry Burk testi-
fied that he was an employe at the gambling room. "I seen
him [defendant] put his hand out, and get some money from
this gentleman [Cullinan]. I am pretty sure it was a pocket-
book. He then put some silver in the center column. No, sir;
I am positive there was no grabbing or snatching of the
pocketbook from any one in my presence. There was no com-
plaint there before me. If any was made, I would have heard
it." He further says: "Didn't see any twenty dollar bill.
He didn't change any twenty dollar bill with me. Yes; Fisher
won some money there. I thought it was in the neighborhood
of fifteen dollars to eighteen dollars." E. L. Burk, bartender
at Orton's saloon, testifies that defendant left money with him
in a sealed envelope for Cullinan; that he offered it to Cul-
linan, and he refused to accept it. There is a conflict in the
evidence as to whether Cullinan was drinking and drunk.
Defendant says: "He drank nine or ten glasses of whisky and
one glass of beer;" while Cullinan says he did not drink any,
and several disinterested persons say that Cullinan was not
intoxicated. We have stated sufficient of the testimony to
show what the claims of the parties are, and somewhat as to
the merits of those claims.

II. Of the nineteen assignments of error, all except
four relate to rulings on evidence. The contention is that
defendant was entitled to introduce evidence in support of
his theory of defense, and it is complained that he was pre-
vented from going into a full explanation in reference thereto.
The defense is that defendant did not snatch the money from

Cullinan; that he did not take it feloniously, but with Cullinan's consent. We have read the evidence with care, and do not find a single instance wherein the defendant was denied the right to evidence that tended to support his defense. He and his witnesses were permitted to testify, without objection, to all that took place in the gambling room, and as to the manner in which the money came into the possession of the defendant. The rulings objected to relate to matters occurring after the alleged larceny, that were immaterial or not proper cross-examination.

III. Defendant's next complaint is that "there is not an instruction along the line of the defendant's theory of defense." The court plainly instructed that, to convict, the jury must find beyond a reasonable doubt, that defendant did take the money of John Cullinan unlawfully and feloniously, with the intent then and there to convert the same to his own use, and permanently deprive the said John Cullinan of said money without the consent and against the will of the said John Cullinan. There was no error in the instructions in the respect complained of.

IV. Among the grounds for a new trial it is alleged that the indictment does not plainly conform to the requirements of the Code, "because the offense charged is not stated in ordinary, concise language, and in such manner as to enable a person of common understanding to know what is intended, and the court to pronounce judgment upon the indictment according to the law of the case." It is contended in support of this allegation that there is not a sufficient description in the indictment of the money alleged to have been stolen, nor an averment that a more particular description was to the grand jurors unknown. The indictment charges the stealing of "twenty-two dollars and fifty cents in lawful money of the United States, of the value of twenty-two dollars and fifty cents." Defendant's counsel cite a large number of authorities to show what the common-law rule is as to the description that must be given of the money stolen, and the states in which this rule is applied. Some of these hold

that the particular kind of money must be stated,—that is, whether coin or paper, and the kind of coin and paper, but not a description of each particular coin or bill; while others hold that the coins or bills should be individualized by the number of pieces or bills, and their respective denominations and kinds. The authorities generally agree that the more general description may be excused by an averment that a more particular description is to the grand jurors unknown. Among the citations are Clark Criminal Procedure, 221; Bish. Criminal Procedure, section 702, and following; Wharton Criminal Pleadings and Practice, 134, and following; 1 McClain Criminal Law, section 592; *Merwin v. People,* 26 Mich. 298. There is no dispute but that, if the rule of the common law is to be applied, this indictment is defective. Therefore we need not further notice the authorities cited in support of the rule, but proceed to inquire whether that rule applies in this state.

In Michigan, Missouri, Indiana, and possibly other states, there are statutes providing, in effect, that it is sufficient to describe the money simply as money, without specifying any particular coin, note, bill, or currency. We have no statute identical with these, but it is urged on behalf of the state that, under the construction given to our statute by this court, the rule of the common law in this respect has been held not to apply in this state. "If any person steal, take and carry away of the property of another any money, goods or chattels,   *   *   *   he is guilty of larceny." Code, section 4831. Larceny from the person is punishable by imprisonment in the penitentiary, not exceeding ten nor less than two years. Code, section 4755. We now turn to the provisions of our Code with respect to the indictment. The indictment must contain "(2) a statement of the facts constituting the offense in ordinary and concise language without repetition, and in such manner as to enable a person of common understanding to know what is intended." Section 5280. "The indictment must be direct and certain as regards   *   *   *   (2) the offense charged; (3) the particular circumstances of

the offense charged, when they are necessary to constitute a complete offense." Section 5282. "The words used in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning." Section 5287. "The indictment is sufficient if it can be understood therefrom * * * (5) that the act or omission charged as the offense is stated in ordinary and concise language, with such certainty and in such manner as to enable a person of common understanding to know what is intended, and the court to pronounce judgment according to law upon a conviction." Section 5289. "No indictment is insufficient, nor can the trial, judgment or other proceeding thereon be affected, by reason of any of the following matters: * * * (5) For any other matter which was formerly admitted a defect or imperfection, but which does not tend to prejudice the substantial rights of the defendant upon the merits." Section 5290. Section 5462 provides that, on appeal by the defendant in a criminal case, "the supreme court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands." It cannot be doubted that the purpose of these statutes is to dispense with those technical rules of the common law that sometimes prevent a disposition of cases upon their merits, whenever the same can be done without prejudice to the rights of parties. Such is undoubtedly the tendency of modern legislation and decisions.

In the early case of *Munson v. State,* 4 G. Greene, 483, it was charged that the defendant "did feloniously steal, take, and carry away twenty-four dollars of Clark's Exchange Bank bills, of the value of twenty-four dollars, and seven dollars of other bank bills, the names of the banks to the grand jurors unknown, of the value of seven dollars, and one hundred and nine dollars of gold and silver coin, of the value of one hundred and nine dollars, the whole being of the value of one hundred and forty dollars." That indictment was found

under a section of the Code identical with section 4831, quoted above. The court says: "The description of the money and bank notes alleged to have been stolen comes fully up to the requirements of the Code. Money is sufficiently designated by the words 'gold and silver coin.' Bank notes are sufficiently designated by the words 'Clark's Exchange Bank bills, of the value of twenty-four dollars,' and also the words 'seven dollars of other bank bills, the names of the banks to the jurors unknown.' This court has repeatedly decided that an offense is sufficiently charged in an indictment if it is substantially in the language of the statute. * * * In *People v. Kent,* 1 Doug, (Mich.) 42, it was held that a description of the property stolen as 'bank notes'. or 'bank bills,' merely following the language of the statute, is sufficient. It will be observed that the allegation that the names of the banks were to the grand jurors unknown refers to the seven dollars of other bank bills." In *State v. Hockenberry,* 30 Iowa, 504, it was charged that the defendant stole "one hundred and eighty dollars in bank notes, usually known and described as 'greenbacks.'" The court says: "Without doubt it was practicable to have described the property stolen with more clearness and exactness, but we are of opinion that the language is such as to 'enable a person of common understanding to know what was intended.' * * * The crime being charged in such a manner as to enable a person of common understanding to know what is intended, and the court to pronounce judgment, etc., the indictment under the statute is sufficient." In *State v. Hoppe,* 39 Iowa, 468, it was charged that the defendant stole "divers bank bills, commonly known and denominated 'national currency,' of divers denominations, the number and denominations of which are to the grand jurors unknown, of the amount and value of six hundred and fifty dollars." The court says: "If a more full description should be required, it would in many cases afford the thief entire immunity. No one from whose safe five hundred dollars of the usual denominations received in ordinary business should be stolen could testify as to date, num-

ber, and denomination of the bills taken. It would be a mere chance if he would be able to identify certainly a single bill. The law should not, and does not, require unreasonable things. The indictment, we think, is sufficient." In that case it was averred that the number and denomination of the bills were to the grand jury unknown. In *State v. Graham*, 65 Iowa, 617, it was charged that the defendants stole "seven one hundred dollar notes, of the value and denomination of one hundred dollars each, consisting of national bank notes and national currency notes, called 'greenbacks,' and all of the aggregate value of seven hundred dollars." The demurrer to this indictment was overruled, and this court said: "We have set out the indictment as the very best argument that could be made in support of the decision of the court in over-ruling the demurrer. If we were to hold that this indictment is demurrable, we should very greatly astonish the legal profession. The only respect in which it could well be made more specific is that it might have stated how many of the one hundred dollar notes were national bank notes, and how many were national currency notes. But this was wholly unnecessary, because, if there was one of each, or of either, of the value of one hundred dollars, the indictment was sufficient." In *State v. Pierson*, 59 Iowa, 271, the defendant was charged with stealing "a bill of exchange, to-wit, an order for the payment of money, purporting to be signed by C. S. Bartlett, and payable at the Union National Bank, Chicago, Ill., and of date of the sixth day of June, 1881, and of the value of twenty dollars and ninety-seven cents." The court says: "There is no requirement that, in an indictment for the larceny of an instrument in writing, the property shall be any more particularly described than any other stolen property. We have in this indictment a charge that the defendant stole an order or bank check for the payment of money, naming its date, owner, and place of payment, and an allegation of its value. There is no more reason for requiring any more particular description of the stolen property than there would be to require that an indictment for the

larceny of a horse could describe the animal by color, age, and marks and brands." In *State v. Alverson,* 105 Iowa, 152, the indictment charged the embezzlement of four hundred dollars of moneys. Section 4317 of the Code of 1873 provides that in such cases it was sufficient to allege the embezzlement of money generally, without designating its particular species. The indictment was held sufficient. In *People v. Reavey,* 38 Hun. 419, the defendant was charged with larceny by false pretenses. The averment was that he obtained from her "the sum of two hundred and seventy-five dollars in money, lawful money of the United States, and of the value of two hundred and seventy-five dollars." It was contended that this was not a sufficient description of the money. The court says: "But the sufficiency of the indictment is not to be determined by these authorities conceding and applying the technical principles of the common law; for they have been in a great measure superseded by the enactment of the Code of Criminal Procedure; and the question, accordingly, to be considered, is not whether the indictment might in this respect be held to be defective under the preceding practice, but whether it is sufficient under the provisions of the Code of Criminal Procedure." The opinion shows that the Code of Criminal Procedure of New York contained provisions quite similar to those of our Code quoted above. For instance, no more was required in the indictment than a plain and concise statement of the act constituting the crime; a brief description of it as it is given in the statute; and that the indictment is sufficient in the description of the crime if it can be understood from it that the crime charged was committed within the jurisdiction prior to the finding of the indictment, and that the act or omission charged as the crime is plainly and concisely set forth, and that it is stated with such a degree of certainty as to enable the court to pronounce judgment upon the conviction according to the right of the case. It was further provided that "no indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of any imperfection in matter of form,

which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The court said: "This indictment was clearly sufficient, within these sections of the Code of Criminal Procedure, for it distinctly charged the defendant with unlawfully, by means of false pretenses and representations, known to him to be false, obtained this sum of money from the complaining witness. It was framed in such a manner as clearly and distinctly to charge this offense, and to be incapable of being misunderstood by the defendant when he was arraigned and tried upon it. That it was not misunderstood appears by his own testimony, in which he acknowledged the receipt of this sum of one hundred and sixty-five dollars, as well as the other smaller amounts mentioned by the witness in the course of her evidence." See, also, *Com. v. Stebbins,* 8 Gray, 492; *Com. v. O'Connell,* 12 Allen, 451; *State v. Hurst,* 11 W. Va. 54; *State v. Ziord,* 30 La. Ann. 867; *State v. Green,* 27 La. Ann. 598; *Goldstein v. State* (Tex. Cr. App.) 23 S. W. Rep. 686. The purpose of the description of the stolen property is to identify the particular transaction so that the accused may not be put upon trial for a different offense from that charged; and the conviction or acquittal may bar further prosecution; that the accused may be informed of the particular transaction constituting the offense, so that he may prepare his defense; and that the court may pronounce judgment according to law. Bishop Criminal Procedure, section 702; *Merwin v. People, supra.*

We think it cannot be said, in the light of our statutes and decisions, that the rule of the common law as to the description, in an indictment, of money alleged to have been stolen obtains in all its requirements in this state. This indictment is direct and certain as regards the offense charged, namely, the larceny "from the person and pocket of one John Cullinan twenty-two dollars and fifty cents, in lawful money of the United States, of the value of twenty-two dollars and fifty cents," in Woodbury county, Iowa, on or about the fifteenth day of December, 1896. It is hardly possible that the

transaction charged could have been taken for any other, either in preparing the defense, in the trial, or in pronouncing judgment. To have added to the charge the kinds of money and a number or denomination of the several pieces, or that a more particular description than that given was to the grand jurors unknown, would not have rendered it any more a charge of a crime, nor aided the defendant in making his defense. Many authorities, recognizing the difficulty of describing stolen money, hold that less particularity should be required than in describing other kinds of stolen property. We conclude that this indictment is sufficiently definite as to the description of the property stolen, under the rule of our statutes and decisions.

V. The sufficiency of the evidence to sustain the verdict is presented by the assignments of error, but not argued. Counsel for defendant have urged with zeal and ability every point that could properly be raised upon the record, and they are excusable for not arguing this assignment, as the evidence leaves no reasonable ground to doubt the guilt of the defendant. AFFIRMED.