STATE OF IOWA, Appellee, v. FLOYD HORTON, Appellant.

No. 43917.

APRIL 6, 1937.

John H. Mitchell, Attorney General, Roger F. Warin, County Attorney, and James R. Locke, Asst. County Attorney, for appellee.

Stephens, Thornell & Millhone and Flick & Lucas, for appellant.

ANDERSON, J.—The appeal in this case is from an order of

the trial court refusing to order a transcript of the evidence, on the application of the defendant, at the expense of the county; and it involves an interpretation and application of Code section 14000, under the record made on the hearing of defendant's application for the order.

Section 14000 of the Code is as follows:

"If a defendant in a criminal cause has perfected an appeal from a judgment against him and shall satisfy a judge of the district court from which the appeal is taken that he is unable to pay for a transcript of the evidence, such judge may order the same made at the expense of the county where said defendant was tried."

From the facts, as disclosed by the record, the defendant, Floyd Horton, was tried and convicted on the charge of first degree murder of his wife by the administration of poison. Judgment was pronounced on April 25, 1936, committing him to the penitentiary for life. On May 22, 1936, the defendant perfected an appeal to the supreme court by the service and filing of a notice of appeal. On September 11, 1936, he received a soldier's bonus from the United States government in the sum of $791. On September 14, 1936, the defendant signed and verified an application to the supreme court for an extension of time to file an abstract of record, and the time was extended to January 1, 1937. This application for extension of time was filed seven days before the expiration of the period for filing the abstract in the supreme court. On September 15, 1936, the defendant signed and verified the application for an order of transcript at the expense of the county. Later a further extension of time within which to file abstract was granted by the supreme court. Resistance was filed to the application for the transcript and, after evidence was taken, the application was denied by the trial court, and the defendant has appealed.

In addition to the record facts, above outlined, the record discloses that during the month of March, 1936, and soon after his arrest the defendant made to his attorneys a note for $2,500, payable one year from its date, and the same was secured by a mortgage upon 80 acres of land owned by himself and his six brothers and sisters. The record also shows that the defendant's interest in the real estate thus mortgaged was a one-seventh, and of the estimated value of $55 or $60 an acre. The record further

shows that his one-seventh interest in the personal estate of his father was approximately $415. This estate had been in the course of administration for about nine months prior to March, 1936. The defendant also owned personal property which was sold and the aggregate proceeds therefrom were $1,099; he also owned an automobile of the value of $175; he also was in possession of a check for $50, which was the proceeds of sheep owned by him and sold; he also had coming to him a soldier's bonus amounting to $791, which was later, and on September 11, 1936, paid to him. These items total $3,158, and other than his one-seventh interest in the personal estate of his father amounting to $415, the items were incumbered and disposed of as follows: He gave a note and mortgage to an undertaker for $350 covering his interest in the eighty acres of land; he gave the $50 check to one of his brothers; he gave the automobile to another of his brothers; he paid out of the sale of his personal property the sum of $1,053.80 on the $2,500 note he had given to his attorneys, and on September 11, 1936, he paid on the said note $700 of his bonus payment. The latter payment having been made three days before he signed the application for extension of time to file abstract and but four days before he made the application for a transcript at the expense of the county. At the time of the hearing on his application, according to his testimony, he had divested himself of all of the property he owned, in March, 1936, except his one-seventh interest in the personal estate of his father. Such are the facts as disclosed by the record, and upon these facts the district court denied the application for a transcript at the expense of the county, and in doing so used the following language:

"The evidence shows that the soldiers' bonus wouldn't be paid until sometime in, after the month of June, 1936, and was in fact not paid until about the month of September, early in September, 1936. The defendant was tried and he was convicted and notice of appeal was served in the month of May. No attempt was made at that time by application to the court for an order for a transcript at the expense of the State. Now, this to the Court is significant of the situation that the defendant believed himself in at that time, because he would be met instantly, if the application had been filed at that time, with the claim that he still had this bonus money, and was amply able to pay for

the transcript. The application for the transcript at the expense of the State was not filed until sometime in August, I believe, according to the record, or sometime in September. An extension of time was asked of the Supreme Court in which to file this abstract with the Supreme Court. It must be borne in mind that the time that the defendant had to take his appeal had almost expired at the time the application was made for a transcript at the expense of the State. It hadn't yet expired, but it was nearing the time when the abstract would have to be filed in the Supreme Court. It was said that the defendant, after this time, after he received his bonus money, paid the $700 of the $791 he received to apply on the note held by the attorneys for the defendant, and that he has no means or no money with which to perfect an appeal. Applications of this kind are addressed to the sound discretion of the Court, and unless the Court abuses that discretion the Supreme Court does not interfere with the action of the trial court. If I for one minute thought that this defendant had intended to proceed with his appeal regardless of the disposition of his bonus money, that he in good faith ordered a transcript or attempted to have gotten a transcript at the expense of the State, I would feel different about this matter. As I view the matter, the defendant here is simply trying to protect his brothers and sisters and his relatives in the debt that they will have to pay if the soldiers' bonus money would have been applied to the procuring of the transcript. Now, he had his election. He knew he had this appeal pending. He knew, must have known and his attorneys must have known under the law that a transcript would have to be procured and that it would be considerable expense attached to the procuring of the transcript. Now, if he elects instead of applying the money to the purchase of the transcript, if he elects to pay the money on the note and obligation which he owed, and there is no dispute about the amount he agreed to pay and which the Court thinks was proper for him to pay, if he elected to do that in order to cut down the amount that his brothers and sisters would have to pay upon the debt that was owing to counsel for the defendant, then that is all right and his prerogative, but I don't believe he comes into this Court with such a record as would warrant this Court in ordering a transcript at the expense of the people of Taylor county when under those circumstances he has taken the money which under the federal law he couldn't pledge or en-

cumber in any way, shape, manner or form, regardless of how you put it."

It is evident from the foregoing quoted portion of the statement of the trial court in denying the defendant's application that the court did not take into consideration the merits of the defendant's appeal from his conviction, and that the trial court did not act in a capricious or arbitrary manner; but exercised his best judgment and discretion under the statute and the record facts.

It has been uniformly held that the burden of proof in a matter of this kind is on the defendant and that he must "satisfy the judge of the district court from which the appeal is taken that he is unable to pay for the transcript of the evidence." Code sec. 14000; State v. Steidley, 133 Iowa 31, 110 N. W. 147; State v. Kehr, 137 Iowa 91, 93, 114 N. W. 542; State v. Shaffer, 137 Iowa 93, 114 N. W. 540.

It is also the uniform holding of this court that the ruling of the trial court will not be disturbed, on appeal, unless it appears that the finding has no support in the evidence, and that where there is substantial evidence supporting the finding of the trial court the appellate court will not reverse. State v. Knight, 204 Iowa 819, 216 N. W. 104, and cases above cited.

The section under consideration is not mandatory and does not extend to the defendant the right, as a matter of law, to a transcript at the expense of the county. We have also held that such an application should be denied where it is shown that the defendant has voluntarily placed himself in a situation where he is unable to pay for the transcript. He may be without present means, but if the record shows that he voluntarily placed himself in that situation knowing that he must procure a transcript of the record to present his appeal to the appellate court he is not entitled to the gratuity provided by the statute.

The record here shows that after the defendant's arrest for the serious crime with which he was charged, he voluntarily disposed of all his property, except his soldiers' bonus and his interest in the personal estate of his father, without, apparently, a thought or concern as to future expense incident and necessary to a final determination of his guilt or innocence. It is claimed by the defendant that at the time his brothers and sisters joined with him in the mortgage on the eighty acres of land

securing the payment of the $2,500 attorneys' fee note, that he promised his brothers and sisters that he would apply the proceeds of the sale of his personal property and his soldiers' bonus toward the payment of the attorneys' fee note. This, however, is not very impressive or controlling. It appears that only one of his brothers was present at the time this alleged promise was made, and the fact that there was such promise is only supported by the testimony of himself and the one brother present. Another brother, whom the defendant claimed was present when the promise was made, denies in his testimony that he was present and denies any knowledge as to such promise. It further appears that the mortgage was signed and acknowledged by the brothers and sisters at widely different times and locations. The mortgage bears date of March 2, 1936. It was acknowledged by one brother on March 9, 1936; by a sister on March 3, 1936, in Decatur County, Iowa; by another sister on the 13th day of March, 1936, in the state of Montana; by another sister on March 6, 1936, in Cook County, Illinois; by another brother Harry Horton, on the 27th day of March, 1936, in the Dominion of Canada, and by another brother in Taylor County, Iowa, on the 10th day of March, 1936. No letters or other evidence as to the fact that the alleged promise was made or that the brothers and sisters relied on the promise is shown in the record. It must be borne in mind that a provision of the Act of Congress providing for the payment of the soldiers' bonus provides that it shall not be transferable, assignable, subject to attachments, levies, or seizure under any legal or equitable process; and it should be further borne in mind that at the time the defendant received this bonus of $791 only a few days remained within which to file an abstract on his appeal in the state Supreme Court. He knew and his attorneys knew at that time that it would be necessary to procure a transcript and prepare, print, and file an abstract in the Supreme Court, and that there only remained a week or ten days within which to do so. There is no evidence that a transcript of the evidence had been ordered from the reporters. The defendant and his attorneys no doubt knew that if he filed his application for a transcript at the expense of the county prior to the time of his disposal of his soldiers' bonus that his application for such transcript at the expense of the county would be denied, and we must conclude that he voluntarily placed himself in an impecunious situation only three or four days before he

made the application here involved. We are of the opinion that the record in this case clearly puts the defendant outside of the provisions of Code section 14000.

In the case of State v. Shaffer, 137 Iowa 93, loc. cit. 96 and 97, 114 N. W. 540, 541, we had a record under consideration that was really stronger in supporting the defendant's application than in the case at bar. In that case when the defendant was arrested he was possessed with ample means with which to make a defense but shortly thereafter he conveyed and transferred all his property to a trustee for the payment of his debts. His excuse was that his wife and children had earned the property. There was no other consideration for the transfer and this occurred prior to his trial and conviction of murder in the first degree, while in the instant case the defendant disposed of enough of his property to pay for the transcript after his conviction, and nearly four months after he had perfected his appeal to the supreme court. In disposing of the appeal of the defendant from an order denying a transcript in the cited case, we said, speaking through Justice Ladd:

"As the property, after the satisfaction of all debts, was worth between $2,000 and $3,500, we have to inquire whether a person who has voluntarily dispossessed himself of the means necessary for his defense is in a situation to invoke the benefit of the statute, providing that, if he 'shall satisfy a judge of the district court from which the appeal is taken that he is unable to pay for a transcript of the evidence, such judge may order the same made at the expense of the county where said defendant was tried.' Such is the benevolence of the law that a pauper even cannot for want of funds be deprived of the same review of the proceedings against him in the court of last resort as is accorded his more fortunate neighbor; and this to the end that justice shall ever be administered 'equally to the rich and the poor.' But this does not mean that one who voluntarily makes of himself a pauper, and thereby purposely deprives himself of the means necessary to meet the expenses of his defense, can avail himself of this gratuity. Doing so subsequent to formal accusation is indicative of bad faith, and, when unexplained, is evidence of the fraudulent purpose of avoiding his own proper expenses by saddling them on the county. Ordinarily good faith on the part of such an applicant is to be presumed and the statute pro-

ceeds on this theory; but it does not follow that the beneficence provided for the protection of the indigent can be made to serve as a reward for trickery and fraud in becoming such. If possessed of means ample to meet the expenses of conducting his defense subsequent to the formal accusation in court, this condition is presumed to continue until the contrary appears, and is not met by proof of a purely voluntary transfer thereof under circumstances indicating bad faith with the State . The law abhors fraud, and will not bestow its bounty even for the protection of one accused of crime, unless the applicant comes into court with clean hands. He may be without present means, but, if so, the record is such as to warrant the conclusion that he voluntarily put himself in that situation for the very purpose of casting the burden of his defense on the county, and, this being so, the court rightly adjudged that such conduct estopped him from claiming the benefit of the statute, and that he ought not to be assisted at the expense of the public.''

In State v. Steidley, supra, where the facts showed that the defendant had property of the net value of $2,800 which he transferred to his attorneys to secure them for their services and to secure his bondsman on appeal, in announcing the rule interpreting the statute under consideration the court said: ''To authorize the judge of the trial court to order a transcript of the evidence at the expense of the county, the defendant must satisfy him that he is unable to pay the same. * * * Under this statute, it is the duty of the trial court to hear the evidence and determine therefrom whether the defendant is unable to pay for a transcript, and, unless it appears to this court that the finding is practically unsupported by the evidence, we will not interfere with the order. * * * In other words, where there is substantial evidence supporting the finding of the trial court, we will not reverse.'' Citing State v. Wright, 111 Iowa 621, 82 N. W. 1013; State v. Waddle, 94 Iowa 748, 64 N. W. 276; State v. Robbins, 106 Iowa 668, 77 N. W. 463.

Reviewing briefly cases cited by the appellant upon which he bases his right to a reversal:

State v. Goodsell, 136 Iowa 445, 113 N. W. 826. The appellate court found that the trial court based his ruling denying the application for a transcript at the expense of the county on the proposition that the defendant did not have a meritorious ap-

peal, and the case furnishes no support for the appellant in the instant case.

In the case of State v. Wright, 111 Iowa 621, 82 N. W. 1013, the question presented was as to whether the refusal of the trial court to order the transcript was an appealable order, and also determined the question that the finding of the trial court was not conclusive on appeal. In this case the proof showed that the defendant was entirely without means and the state's only contention was that he was able to procure bail, and that some of his relatives owned property. There was apparently in the fact situation no question presented to the trial court requiring the exercise of discretion.

State v. Harris, 151 Iowa 234, 130 N. W. 1082, 1083. The record shows that the defendant had no means whatever to procure the transcript and no relatives or friends willing to assist him, and in disposing of the question this court said that, "the defendant conclusively showed his own inability to procure a transcript."

In the case of State v. Van Gorder, 192 Iowa 353, 184 N. W. 638, the application was denied because the defendant was an able-bodied man and capable of earning $5.00 or more per day and could earn enough money to pay for the transcript; while, as a matter of fact, at the time of the hearing on his application he was confined in jail in another state.

In the case of State v. Tonn, 190 Iowa 381, 180 N. W. 164, the county attorney in resisting a like application attempted to show that certain members of an organization in Chicago could be called upon by the defendant to furnish the funds for the transcript. The facts are not at all parallel with the case at bar.

Measured by the test laid down in the cited cases to which we have previously referred, we are constrained to hold that the record amply warrants the ruling of the learned trial court in refusing to order a transcript at the expense of the county in this case. An affirmance necessarily follows.—Affirmed.

RICHARDS, C. J., and DONEGAN, PARSONS, HAMILTON, STIGER, SAGER, and KINTZINGER, JJ., concur.