STATE OF IOWA, Appellee, v. ROBERT HILL, Appellant.

No. 47105.

(Reported in 32 N. W. 2d 398)

676

MAY 4, 1948.

Paul B. Holleran, of Clinton, and Frederic M. Miller, of Des Moines, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Carroll F. Johnson, County Attorney, for appellee.

GARFIELD, J.—A jury found defendant, Robert Hill, age 16, guilty of reckless driving as defined by section 321.283, Code, 1946. The crime consists of driving "any vehicle in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property." Defendant was fined $100 and has appealed to this court.

The prosecution is based on defendant's operation of his father's 1940 Ford V-8 car on the night of January 10, 1947, on "blacktop" primary Highway 291 between the small town of Low Moor and Low Moor Corners where 291, from the south, meets east-and-west U. S. Highway 30 west of the city of Clinton. A gravel road south from Elvira meets the north end of Highway 291 at Low Moor Corners.

Defendant with his brother, 13, and a young brother-in-law had attended a basketball game at Elvira in which Letha Oberman, 16, was a player. Defendant and his two companions in the Hill car and Letha and six companions in her father's Chevrolet car left Elvira about 10:30 p.m., going south on the gravel road. When the Oberman car was on Highway 291 about one-fifth mile south of Low Moor Corners, going south toward the Oberman home near Low Moor, defendant, headed north, crashed into the front of the Oberman car causing the occupants to be badly hurt.

 I. There is no merit to defendant's contention he was entitled to a directed verdict because of insufficiency of the evidence. In this connection we must view the testimony in the light most favorable to the prosecution. State v. Rosenberg, 238 Iowa 621, 27 N. W. 2d 904, 908, 909. It is necessary to refer only to the evidence which tends to support the verdict. State v. Kneedy, 232 Iowa 21, 27, 3 N. W. 2d 611, 615, and citations.

There is substantial testimony that soon after he left Elvira until the collision occurred defendant was "showing off" and attempting to annoy the occupants of the Oberman car and at

the time of the collision was trying to frighten them. A short distance south of Elvira Letha stopped her car to fix the defroster. Defendant drove alongside and stopped. Letha then started for the Smith farm, about one and one-half miles north of Low Moor Corners, where her younger sister was to spend the night. Defendant drove into the Smith lane ahead of the Oberman car. Apparently in an effort to avoid defendant, Letha went down a side road south of the Smith farm and waited about fifteen minutes for defendant to leave. She then returned to the farm. Defendant was still there but left ahead of the Oberman car by driving around it in the lane.

After another apparent attempt to avoid defendant, Letha drove south to Low Moor Corners where one of her passengers lived. When the Oberman car was parked at "the Corners" to let out this passenger defendant came from the north without lights on his car and circled the Oberman car at a distance of 10 to 15 feet and at a speed of 20 to 30 miles per hour. He then drove north about one-fourth mile without lights, put on his lights to turn around, then drove his unlighted car south again to the Corners. There is evidence defendant then drove east on U. S. Highway 30.

A few minutes later defendant crossed 30 and drove south on 291. His lights were off until after the collision. He turned west into Kunau's lane, lined with trees, one-half mile south of 30, stopped there about a minute, backed out and turned north on 291. Soon after defendant crossed 30, Letha left the Corners to go south on 291 to her home near Low Moor. Defendant, however, lived at the Corners and offered no reasonable explanation of his conduct preceding the collision. A fair inference is that defendant backed out of the Kunau lane and headed north when he saw Letha leave the Corners.

When the Oberman car was about one-fifth mile south of No. 30 on its right (west) side of Highway 291, moving south at moderate speed, the Hill car (without lights) came toward it from the south in the middle of the road. When it was about 20 feet in front of the Oberman car, the Hill car swung or swerved over in front of it and caused the collision. This is the testimony of the boy who sat in the front seat with Letha.

Further reference to the evidence is unnecessary. We think

it clear the jury could properly find defendant drove "in such manner as to indicate either a willful or a wanton disregard for the safety of persons or property" in violation of Code section 321.283.

 It was not necessary for the jury to find defendant intended to harm the occupants of the Oberman car. Reckless driving is not an intentional wrong in the sense that resulting harm is intended. The statute is violated by conscious and intentional driving which the driver knows, or should know, creates an unreasonable risk of harm to others. Restatement of the Law, Torts, section 500; State v. Bolsinger, 221 Minn. 154, 21 N. W. 2d 480, 484, 491, and citations, construing a statute identical to ours.

Our conclusion as to the sufficiency of the evidence finds support in Hill v. State, 27 Ala. App. 202, 169 So. 21; State v. Mickle, 194 N. C. 808, 140 S. E. 150; State v. Lyon, 59 N. D. 374, 230 N. W. 1.

State v. Jacobsmeier, 229 Iowa 878, 294 N. W. 920, cited by defendant, seems to be the only prosecution under what is now section 321.283 to have reached this court. The facts in that case are not analogous. They disclosed only momentary inattention and negligence, not willful or wanton disregard for the safety of others.

 II. Defendant complains of the admission of evidence that without lights he circled the Oberman car while it was parked at the Corners. Some of this testimony, particularly that of David Thompson who alighted from the Oberman car at the Corners, was received without objection. Indeed the record seems to indicate a deliberate purpose of defendant's counsel not to object to the two principal questions put to this witness on this subject. Counsel started to object to one of the questions and then announced the objection was withdrawn. It is obvious defendant is in no position to complain of such evidence.

 Aside from the above, the testimony referred to was properly received. Defendant's contention it was inadmissible because, it is said, there was no substantial evidence of reckless driving at the time of the collision is disposed of by Division I hereof. His claim the testimony was too ᵥremote to be ad-

missible is equally without merit. The Corners are less than one-fourth mile from the place of collision. Circling the Oberman car preceded the accident by only five to eight minutes.

Defendant's driving was traced from the occurrence at the Corners until the collision. The jury could find he deliberately drove without lights all that time except when turning around in the gravel road north of the Corners. Testimony his lights were off when he was at the Corners corroborates evidence he was without lights when the collision occurred. Further, the happening at the Corners was part of a course of conduct which continued until the collision. It was part of a continuing offense. Such testimony tends to explain defendant's acts and purposes when the collision occurred and to rebut the claim now made that the Hill car might have accidentally skidded into the Oberman car.

This evidence was admissible under the familiar rule that where acts are so closely related in point of time and place and so intimately associated with each other that they form a continuous transaction, the whole transaction may be shown for the purpose of showing the scienter or quo animo of the party charged. State v. Robinson, 170 Iowa 267, 276, 152 N. W. 590; State v. Hickman, 195 Iowa 765, 772, 193 N. W. 21; State v. Rounds, 216 Iowa 131, 133, 134, 248 N. W. 500. See, also, 22 C. J. S., Criminal Law, section 689, and, as further supporting our conclusion, State v. Nuzum, 58 S. D. 6, 234 N. W. 665, 667.; Sims v. State, 149 Miss. 171, 115 So. 217, 219.

Defendant relies on Neyens v. Gehl, 235 Iowa 115, 125, 15 N. W. 2d 888, 892; Thomas v. Charter, 224 Iowa 1278, 1281, 278 N. W. 920, 922, and Glass v. Hutchinson Ice Cream Co., 214 Iowa 825, 829, 243 N. W. 352, all civil cases which hold there was no abuse of discretion in the rejection of evidence of speed at a place remote from the scene of the accident where it was not shown such speed had some connection with the speed at the point of collision. In Neyens v. Gehl, supra, the testimony was rendered inadmissible by a showing that defendant slowed down twice between the time inquired about and the collision. There is nothing in these decisions inconsistent with our conclusion here.

 III. It is argued the court's instructions 10 and 11 erroneously call attention to evidence favorable to the State without reciting facts favorable to defendant.

As defendant asserts, the practice of setting out in an instruction testimony on which one party relies is not to be commended because it tends to give undue prominence thereto. Where an instruction does set out evidence on some question that is favorable to one party it is error not to set out testimony on such question which is unfavorable to that party. State v. Dunne, 234 Iowa 1185, 1194, 1195, 15 N. W. 2d 296, 301, and citations; Hayungs v. Falk, 238 Iowa 285, 293, 27 N. W. 2d 15, 19. See, also, State v. Williams, 238 Iowa 838, 845, 28 N. W. 2d 514, 518, 519, and citations; 23 C. J. S., Criminal Law, section 1308; 53 Am. Jur., Trial, sections 566, 567.

Instruction 10, without undue emphasis, calls attention to evidence, "all of which has been denied by defendant," that he drove without lights and on the wrong side of the highway. The instruction then cautions the jury in effect that such evidence would not support a conviction unless defendant acted in willful or wanton disregard for the safety of persons or property.

Instruction 11 mentions, without undue prominence, the testimony that defendant circled the Oberman car at the Corners and drove without lights north of Highway 30 and in crossing it, stating in each instance that all such evidence was denied by defendant. The instruction then cautions the jury that such testimony was not to be considered on the manner in which defendant was driving at the time of collision (this statement is unduly favorable to defendant), but only upon the question whether at such later time defendant intended to drive in willful or wanton disregard for the safety of persons or property.

Defendant's principal criticism of these instructions seems to be that mention of defendant's denial of the evidence therein referred to does not sufficiently call attention to the testimony favorable to him. It is true defendant's 13-year-old brother denied the Hill car circled the Oberman car at the Corners. It is somewhat significant however that the brother once testified; *"From 11:30 on we did not circle the Oberman car at the*

Corners." This witness also said that the last he remembered before the collision, defendant was not driving on the west (left) side of the highway and the lights were on as they proceeded north. He did not remember, apparently because of shock, what immediately preceded the collision.

Defendant's other passenger, his young brother-in-law, was a witness for the State. He did not testify as to the course of defendant's car just before the collision. His testimony as to lights is equivocal:

"I do not remember for sure whether or not the lights were on Robert Hill's car as we parked in the Kunau lane. * * * As Robert backed out of Kunau's lane I think his lights were on. *I do not know.*"

This witness was not asked about circling the Oberman car at the Corners.

Instructions 10 and 11 might have stated the testimony therein mentioned was denied by defendant and one of his witnesses, or by other evidence, rather than merely by defendant. However, failure to do so was not reversible error under the circumstances here. As stated, the evidence mentioned was not unduly emphasized. The instructions are susceptible of the meaning that such testimony was denied by witnesses for defendant and not merely by him as a witness. Defendant was not prejudiced by failure to mention the brother-in-law's equivocal testimony. These instructions were intended to be and actually were favorable to defendant by cautioning the jury the limited effect to be given the State's evidence therein mentioned.

In the cases cited by defendant, notably State v. Dunne, supra, 234 Iowa 1185, 1194, 15 N. W. 2d 296, 301, and State v. Proost, 225 Iowa 628, 635–637, 281 N. W. 167, the erroneous instructions gave undue prominence to testimony favorable to the State and wholly failed to mention defendant's denial thereof.

IV. Instruction 15 told the jury that if they find from the evidence beyond a reasonable doubt that defendant operated his motor vehicle in Clinton county, on January 10, 1947, on Highway 291 between Low Moor and Low Moor Corners at about 11:45 p.m., in such manner as to indicate

a willful or wanton disregard for the safety of persons or property, a verdict of guilty would be warranted, but if they "find he did not do so" they should find him not guilty.

The expression "do not so find" or its equivalent would be preferable to the words above quoted inasmuch as the burden of proof was of course upon the State. Instruction 6 is practically identical with 15 except that it contains the expression "do not so find." No exception was taken to No. 6. Defendant's complaint against instruction 15 is somewhat hypercritical and without merit. The instruction seems to have been given in order to caution the jury again that conviction could be based only on defendant's driving on Highway 291 between Low Moor and the Corners and not upon his previous acts.

V. The court properly overruled paragraph 6 of defendant's motion for new trial which asserts the jury misinterpreted the court's instructions and the verdict is based on defendant's conduct north of Highway 30. In support of this claim defendant submitted identical affidavits of three of the twelve jurors that under instructions 10 and 11 the jury felt they could convict defendant on what took place north of the Corners. In resistance to defendant's claim the State filed affidavits of one of the above three and two other jurors contrary to the affidavits submitted by defendant.

Instructions 10 and 11, considered in connection with other instructions, especially 6 and 15, plainly state defendant could be convicted only because of his driving on Highway 291 between Low Moor and the Corners, not by reason of his acts north of Highway 30. The question of which set of affidavits is the more convincing need not be considered. It is by no means clear, however, the jury misinterpreted the instructions.

The verdict cannot be impeached or avoided in the manner attempted here by affidavits of jurors that they misunderstood the instructions. The question of what influenced the verdict is a matter of opinion which inheres in the verdict itself. State v. Dudley, 147 Iowa 645, 652, 653, 126 N. W. 812, and citations; State v. Lewis, Iowa, 169 N. W. 661, 662; Doyle v. Dugan, 229 Iowa 724, 734, 295 N. W. 128, 133; In re Estate of Murray, 238 Iowa 112, 120, 26 N. W. 2d 58, 63, and citations;

23. C. J. S., Criminal Law, section 1494a(1), page 1313, and cases n65; 53 Am. Jur.; Trial, section 1106.

The only authority cited in support of this assigned error is Packard v. United States, 1 (Greene) Iowa 225, 48 Am. Dec. 375, decided in 1848, which states that affidavits of jurors in a criminal case may be received to show misapprehension of the instructions. Apparently the decision to grant a new trial was influenced in part because of the inconsistency between the verdict of guilty of perjury and the punishment fixed by the jury of a fine of $1.00 and imprisonment for one hour. The decision has never been cited nor followed by this court and must be deemed overruled by our repeated pronouncements to the contrary. In 53 Am. Jur., Trial, section 1106, and 23 C. J. S.; Criminal Law, section 1494a(1), page 1313, n65, Packard v. United States is recognized as opposed to the accepted rule.

As early as Wright v. Illinois & Mississippi Tel. Co., 20 Iowa 195, 210, after a careful review of the authorities this court stated "such affidavit [of a juror] to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror * * * misunderstood the instructions of the court * * *." This pronouncement has been repeatedly followed in the decisions above cited as well as numerous others by this and other courts.

VI. Defendant has appealed from the trial court's order denying him a transcript of the evidence at the expense of Clinton county.

 Section 793.8; Code; 1946, made applicable to the municipal court and judges thereof by section 602.23, provides:

"If a defendant * * * has perfected an appeal * * * and shall satisfy a judge * * * he is unable to pay for a transcript of the evidence, such judge may order the same made at the expense of the county * * *."

Under this statute the burden rests on a defendant to prove he is unable to pay for the transcript. The trial court's ruling will not be disturbed on appeal unless it amounts to an abuse of discretion. State v. Horton, 223 Iowa 132, 136, 272 N. W. 527; and citations; annotation 100 A. L. R. 321, 327–329. Here an abuse of discretion is not shown.

As stated, defendant is 16. He swore he is without money or property. He and his father employed attorney Holleran. After the verdict defendant withdrew $225 from a bank account in his name and that of his 13-year-old brother and paid it to Mr. Holleran for past services in the trial. Mr. Holleran recommended appealing the case. Defendant's father said he could not afford the expense of an appeal. Holleran then asked if he might appeal at his own expense and was authorized to do so. Mr. Holleran then ordered the transcript from the court reporter before hearing was had on defendant's application for the transcript at county expense and testified he expects to see the reporter paid. After the verdict but before judgment Mr. Holleran on his own motion, at his own expense, employed a former member of this court to assist in preparing and presenting the motion for new trial and in prosecuting this appeal.

Mr. Levsen appeared with and assisted Mr. Holleran in the trial. He is general counsel for the insurance carrier on the father's automobile. A few days after the trial a prominent Cedar Rapids law firm ordered a transcript of the evidence and Mr. Levsen ordered a duplicate and promised to pay for it. Although Levsen still appeared as attorney for defendant when the hearing was had on the application for transcript, he said his transcript would not be available for use on this appeal.

All the civil cases growing out of the collision were settled before defendant's argument in this court was prepared. Whether the settlements were made before the abstract was prepared does not appear. So far as shown Mr. Levsen had no use for the transcript after such settlements were effected. No good reason appears why his copy of the transcript could not have been used upon this appeal. Defendant's affidavit in support of his application for the transcript states "he feels it is to his best interest to appeal for the reason there is approximately $56,000 in civil cases pending against him as the result of the accident."

No attempt was made to show the father's inability to pay for the transcript. He operates a garage and owns seven trucks. Defendant works for his father after school.

It is apparent defendant's abstract upon appeal was pre-

pared from a transcript of the evidence. Where such transcript was obtained and what if anything it cost defendant do not appear. The transcript procured by Mr. Levsen or by the Cedar Rapids firm may have been used. It is shown Mr. Holleran was in possession of portions of a transcript in presenting the motion for new trial. If another transcript was furnished Mr. Holleran it would seem it could easily have been prepared by the court reporter at small expense when he made the original for the Cedar Rapids firm and the duplicate for Mr. Levsen.

If the evidence is fairly available to a defendant without the expense of a transcript, the county should not be burdened with furnishing it. State v. Kehr, 137 Iowa 91, 114 N. W. 542. It is not clear the abstract was not prepared from a transcript furnished without expense to defendant. If defendant was not put to expense for a transcript of course the order was not prejudical to him.

We have never held the county must furnish a transcript to a minor defendant whose father is able to pay therefor. There is an intimation in State v. Wright, 111 Iowa 621, 624, 82 N. W. 1013, this need not be done.

We have held such an application should be denied where a defendant has voluntarily placed himself in a situation where he is unable to pay for the transcript. State v. Horton, supra, 223 Iowa 132, 136, 272 N. W. 527, and citations. See, also, annotation 100 A. L. R. 321, 329.

Without further discussion, we are unwilling to interfere with the trial court's denial of a transcript at county expense.— Affirmed.

All JUSTICES concur.