**Carl BRADEN, Petitioner,**

v.

**COMMONWEALTH of Kentucky et al.,
Respondents.**

Court of Appeals of Kentucky.

March 25, 1955.

Robert W. Zollinger, Louis Lusky, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen., Earl Powell, Asst. Atty. Gen., A. Scott Hamilton, Com. Atty., Frank E. Haddad, Jr., Louisville, for respondents Hennessy and Yoder.

SIMS, Justice.

This is an original action in this court. Petitioner, Carl Braden, was convicted in the Criminal Branch of the Jefferson Circuit Court of the crime of sedition and his punishment fixed at imprisonment for 15 years and a fine of $5,000. KRS 432.040. Braden made a motion in the trial court to be permitted to prosecute his appeal in forma pauperis under KRS 453.190 and to be furnished a transcript of the proceedings without advance payment therefor as is provided in KRS 28.440(1). This motion was supported by his affidavit that he is a poor person and without funds to pay for the transcript of the testimony and of the record.

The trial judge overruled this motion, whereupon Braden moved this court for a rule against the clerk of the trial court, John M. Hennessy, and against the official reporter, James M. Yoder, to show cause why the clerk should not furnish the transcript of the record and the reporter a transcript of the evidence to him without advance payment of the cost thereof. This motion was supported by the affidavit of Braden's attorney as well as the transcript of testimony heard by the trial judge on Braden's motion to be permitted to prosecute his appeal as a poor person.

After hearing oral arguments and considering the affidavits, also the record

before the trial judge on Braden's motion, we made the rule absolute and ordered the clerk and the reporter to furnish the transcripts without advance payment of the cost of same. We thought it imperative to immediately pass upon the questions raised by the rule and not take the time to set forth reasons for our decision. As the clerk and the reporter have requested us to render an opinion giving the reasons for our ruling, we now gladly do so.

It is provided in KRS 28.440(1) that the salary of court reporters in counties with a population of 150,000 or more shall be fixed by the fiscal court and they shall receive no other compensation from the county or the state. If it appears that a defendant desiring to appeal is unable to pay for his transcript, the court may direct the reporter to make the transcript for such defendant and the fee may be recovered from the defendant at any future time. In KRS 453.190 it is provided that the court may allow a poor person residing in this state to prosecute or defend any action therein without paying costs.

We have held these statutes not to be mandatory and that the trial judge has a discretion in their application, saying we will not upset his ruling except where it is apparent he has abused that discretion. Shipman v. Com., 264 Ky. 15, 94 S.W.2d 32. In that case it was shown accused had a car worth $25 and owned real estate to the extent of $1,000 and only ten witnesses had testified in the case, which was a simple one of receiving stolen property of sufficient value to make the offense a felony. It would have been an easy matter to prepare a bill of evidence in narrative form. In these circumstances we there held the court did not abuse its discretion in refusing to furnish accused a transcript of the evidence at public expense.

We call attention to the fact that a poor person is deprived of no constitutional right when a court refuses to grant him an appeal in forma pauperis. One has no natural or constitutional right to an appeal as that is a matter purely within the province of the Legislature. Smith v. Bastin, 192 Ky. 164, 232 S.W. 415.

The record before us shows Braden has some assets, but they are meager when compared to the cost of the transcript necessary for his appeal. The trial lasted 13 days and the cost of the transcript will be some $4,000. Braden's property consists of a 1948 model automobile which he purchased in 1953 for $300, and household effects valued at $400. We doubt if these two items were reduced to cash they would net over $200. He and his wife own a home valued at $7,600 upon which there are mortgages aggregating $6,600 in round figures, leaving an equity of $1,000 for both of them. Therefore, a fair value to be placed on Braden's assets is $700.

Against this he owes in round figures $2,300, of which some $600 represents expenses incurred in his trial and in caring for his two young children. Braden and wife executed a mortgage on their home to Mrs. Braden's parents for $5,000 to secure a debt of $2,254.41 he owed them, and it attempted to secure "any such further loans and/or advancements up to a limit of $5000, making a total maximum indebtedness of $7254.41". While this mortgage is of doubtful value due to the existing encumbrances on the home, it does not help the position now taken by Braden. Be that as it may, this record shows petitioner is a poor person and cannot pay for the transcript to be used on his appeal. It is not necessary that an accused must be completely destitute before a court should grant him a pauper appeal. 3 Am.Jur.Supl. "Appeal and Error", § 516, p. 28. Adkins v. E. I. Du Pont De Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43, 11 A.L.R.2d 599. See annotations 6 A.L.R. 1281.

It is shown Braden paid fees aggregating $2,200 to four lawyers for defending him. In an ordinary case we would uphold the trial judge in refusing to order a transcript without advance payment for a person who is able to pay his attorneys such sums. But this is no ordinary case. It is one extremely difficult to defend. It required long and tedious preparation and

the trial lasted 13 days. No lawyer could defend this case as he would an ordinary crime involving comparatively simple facts. If it were that character of case and Braden had expended all of his resources, or a material part thereof, without conserving sufficient funds to bear the expense of the appeal in the event of conviction, we would unhesitatingly say the trial judge did not abuse his discretion in failing to let accused appeal in forma pauperis. We can well understand why Braden needed four lawyers in defending a case of this character. Likewise, we feel that their fees of $1,000, $800, $300 and $100 are not even adequate or commensurate in this character of case.

It is argued that as Braden made a $10,000 appearance bond he could have raised the $4,000 cash to pay for the transcript. The bond was made by his wife depositing $2,000 in cash and his mother and one Walter E. Barnett pledging their property as security for the remaining $8,000. Evidently, sight is lost of the fact that the signing of an appearance bond costs the obligor nothing if the accused does not abscond, while this transcript would require an expenditure of $4,000 in cold cash.

While we have sympathy for the reporter who must bear the expense under KRS 28.-440(1) of furnishing the transcript of testimony to Braden, yet he accepted the appointment as official reporter of the Criminal Branch of the Jefferson Circuit Court at a fixed salary realizing the law placed this potential burden on him. If his salary is not adequate to meet such contingencies as this, then it is the responsibility of the fiscal court of Jefferson County to fix his salary at a figure which will do so. Certainly, it is not the duty of the trial court, nor of this one, to protect a reporter from a hardship he reasonably might have anticipated when he accepted his position.

√ ■ We are in full accord with the foreign authorities relied upon by the Commonwealth which say that before an accused may appeal as a pauper he must show he is without money or property and without relatives or friends who will assist him,

and that his attorney cannot make up the bill of evidence from memory. Riley v. State, 49 Ariz. 123, 65 P.2d 32; Cowley v. State, 65 Okl.Cr. 479, 88 P.2d 914; Gomez v. Superior Court, 134 Cal.App. 19, 24 P.2d 856; Gaines v. State, 61 Okl.Cr. 8, 65 P.2d 422. See annotations in 100 A.L.R. 321; 11 A.L.R.2d 607.

Of course, no one would contend that Braden's attorneys could make up this bill of evidence from memory. Braden's wife is in no position to help him financially as she stands indicted for the same offense of which he was convicted. Nor are her parents able to assist him, as they must hold themselves in readiness to help their daughter if they can when she comes to trial.

We cannot see that State v. Horton, 223 Iowa 132, 272 N.W. 527, has any application, since Braden has not attempted to dispose of any of his property to relatives so that he could qualify as a pauper as did Horton, although he did make an attempt to secure a debt owed his parents-in-law by a mortgage on a home in which he had only a small equity.

Argument is advanced that through friends Braden could raise the money to pay for his appeal; also, that he could raise it through certain organizations. The answer to that is, it is not shown Braden has such altruistic friends, nor that he has any control over these organizations or their funds or power to compel them to pay for the transcript. See State v. Tonn, 190 Iowa 381, 180 N.W. 164. Moreover, local friends or organizations might well shrink from coming to Braden's help for fear of having aspersions cast upon their patriotism. A charge such as this well may be calculated to produce hysteria among the friends of accused and cause them to forsake him. It is a depressing thought but the fact is that at this time in our country's history it may be worth a man's reputation to attempt to assist a friend to raise funds for defense against a charge of sedition, especially where a question of communism is involved.

■ In passing it may be well to repeat here what was expressed in Shipman v.

Com., 264 Ky. 15, 94 S.W.2d 32, the trial judge should see that the accused may not expend his funds in the employment of counsel to defend him and then expect the court to permit him to appeal in forma pauperis. It is within the discretion of the trial judge to see that neither the accused nor the state is imposed upon in granting or refusing the benefit intended to be afforded by the statutes permitting a poor person to appeal without cost. While no fixed rule can be laid down as when to and when not to grant such appeals, and each case must be determined upon its own peculiar facts and circumstances, we will not upset the discretion of the trial judge except in those cases where it is apparent it has been abused in the legal sense.

█ In view of the peculiar facts and unusual circumstances presented in this prosecution, we think it was an abuse of discretion on the part of the trial judge to refuse to order the clerk and the official reporter to furnish Braden a transcript of the record and a transcript of the evidence without requiring him to pay for them in advance.

An order has heretofore been entered which conforms with this opinion.