**Marie NATVIG, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 12758.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 7, 1955.

Decided June 21, 1956.

Petition for Rehearing In Banc Denied
Aug. 17, 1956.

---

Mrs. Jean F. Dwyer, Washington, D. C., for appellant.

Mrs. J. Frank Cunningham, Atty., Dept. of Justice, with whom Mr. Leo A. Rover, U. S. Atty., at the time record was filed, and Michael J. Antonellis, Atty. Dept. of Justice, were on the brief, for appellee.

Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, FAHY and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Appellant was charged by indictment, in nine counts, with having committed perjury in sworn testimony on February 9 and 11, 1955, before a Hearing Examiner of the Federal Communications Commission. Upon appellant's motion two counts were dismissed before trial. The Government, on its own motion, dismissed four other counts. The jury found appellant guilty on counts 4, 7 and 8. In substance these counts charged that about February 9, 1955, during hearings before a Hearing Examiner of the Federal Communications Commission, appellant had perjuriously testified:

count 4, that at a meeting on September 19, 1954, with one Powell, and with Fitzpatrick and Leahy, employees of the F. C. C., she did *not* tell them she had been a member of the Communist Party, that she had known one Lamb in that connection, and that she had, in fact, consorted with Lamb; count 7, that at meetings September 15 and 21, 1954, with one Powers, special agent of the F. B. I., she did *not* tell Powers that she had been a member of the Communist Party, that she knew one Lamb in that capacity, and that she had, in fact, consorted with Lamb; and, count 8, that at the meeting with Powers on September 15, 1954, she did *not* state that she had been a member of the Communist Party.

Appellant assigns various errors which will be mentioned. We have given extended study to the complete record, importantly because of her claim that the Government had offered appellant as a witness in the Federal Communications Commission hearings when it knew that the testimony to be adduced through her was perjurious. We are now satisfied that there is no merit in appellant's contentions as to this aspect of the case which will first be discussed.

On September 15, 1954, appellant voluntarily appeared at the Miami offices of the F. B. I. and introduced herself as "Mary Jones" to special agent Edward J. Powers, who had had no previous acquaintance with her. She told Powers she had read in the newspaper that the F. C. C. was conducting hearings with reference to the reissuance of a television license to a station owned by one Lamb. She told Powers that she had known Lamb as a member of the Communist Party in Ohio during the 1930's when she also had been a member, that she felt an obligation as a loyal citizen to report the facts known to her, for she realized the communications industry was a target of the Communist Party. Powers thereupon called into the conference F. B. I. special agent Schildecker. Both testified at the trial that appellant said she had been a member of the Communist Party from 1934 to 1936; that her Party

name was "Minnie Johnson"; that she had known Lamb to be a member of the Party; that she had attended Communist Party strategy meetings in Columbus, Ohio, with Lamb; that she and Lamb had registered at a hotel in Columbus as man and wife; that in 1936 she had attended a convention in Chicago with Lamb; and that later she went to Washington, D. C., with Lamb to attend a founding convention of the National Lawyers Guild. Appellant said she would be willing to testify in the F. C. C. hearings if her identity could be kept confidential. At the close of the interview, she disclosed her true name.[1]

Then, Powers teletyped to the Washington office the substance of the information submitted by the appellant. On September 17, 1954, Powers was asked by his superior to ascertain whether appellant would be willing to talk to a representative of the F. C. C. Upon her agreement to do so, appropriate advices were relayed to Washington.

Thereupon, one Edward J. Leahy of the F.C.C. telephoned to "Mary Jones," as she was known to him, and asked if he could talk with her about Lamb. Appellant volunteered to come to Washington to talk with Leahy, and travel arrangements were thereupon made. Upon arrival in Washington, on September 19, 1954, appellant met with Powell, Fitzpatrick and Leahy, representing the F. C. C. For some four hours appellant related her experiences as a member of the Communist Party and her associations with Lamb. We need not summarize the details of appellant's statements which were the subject of testimony by Fitzpatrick and Leahy,[2] beyond observing that she reiterated with embellishments what she had previously said to F. B. I. agents Powers and Schildecker.

Appellant returned to Miami where on September 21, 1954, she met again with F. B. I. agents Powers and Schildecker for a discussion lasting at least five hours. Appellant volunteered much additional and more specific information about various Communist Party meetings which she had attended during 1934–1937, supplying the names of individuals present, with details as to her associations with Lamb at the meetings and her personal background. Although willing to testify at the F. C. C. hearings, she desired her identity to be kept confidential for she feared embarrassment to her family who had no knowledge of her membership in the Communist Party or of her relationship with Lamb.[3]

The following day the F. C. C. representatives, Powell, Fitzpatrick and Leahy, on joint telephone extensions, called appellant in Miami to ascertain whether or not she had arrived at a decision about appearing at the F. C. C. hearings. She stated she had refreshed herself since returning to Miami, had supplied the F. B. I. with additional information, but had not yet had an opportunity to talk to her children, which she said she desired to do. Travel arrangements were accordingly made, and when appellant again appeared in Washington on September 23, 1954, she was subpoenaed as a witness in the F. C. C. hearings.

On October 6, 1954, her direct testimony before the Commission's Hearing Examiner consumed an hour and a half. Thereafter she was cross-examined by Lamb's counsel intermittently over some seven days, and when her testimony had been concluded, she returned about October 25, 1954, to Miami.

On February 9, 1955, by counsel for Lamb, appellant was recalled to the F. C. C. hearing before Hearing Examiner Sharfman. She then testified that her prior October testimony was false, and that Powell had induced her to testify she had been a Communist. She also denied that she previously had told Powell, Fitzpatrick and Leahy that she had

1. Such testimony by Powers and Schildecker was offered in support of counts 7 and 8.

2. Offered in support of count 4.

3. Such testimony by the two F. B. I. special agents was offered additionally in support of count 7.

been a member of the Communist Party, that she had known Lamb in that connection and that she had in fact consorted with him. She denied that she had told F. B. I. special agent Powers substantially the same thing. She denied that on September 15, 1954, at her first meeting with Powers, she had told him that she had been a member of the Communist Party in Cleveland from 1934 to 1936. The questions and her answers as they appeared in the transcript of the hearing before Hearing Examiner Sharfman were read into the record to demonstrate these details.

It is wholly immaterial whether or not Mrs. Natvig had ever been a Communist or had consorted with Lamb or had attended meetings with him. The case turned, not on what was the fact, but *on what she had said was the fact*. For all that appears if at her meetings September 15, September 19 and September 21, 1954, she had not told the various witnesses what they testified she had said, the Government through its Federal Communications Commission, might not have gone forward with the hearings. It may reasonably be supposed that if she had not made such statements as of the dates mentioned, she would not have been called as a witness before Hearing Examiner Sharfman.

It was further demonstrated that two weeks after the perjurious testimony had been given, various Government witnesses met with the appellant at her request. She then, as of February 25, 1955, and March 2, 1955, told these witnesses that Powell had not coerced her in any way and that her testimony of February 9 and 11, 1955, was false. Two witnesses from the Internal Security Division of the Department of Justice further testified that they had met appellant at her request on February 23, 1955, at which time she stated that her testimony of February 9 and 11 was false, and that she had not been coerced by Powell to give the testimony as originally offered before the F. C. C. in October 1954.

■■ We are satisfied that there is no merit whatever in appellant's claim

that the special agents of the F. B. I., Powers and Schildecker, had "presented" appellant as a witness knowing that she would testify falsely. It is clear that appellant herself approached these agents in Miami and that they relayed to their Washington office the substance of the information resulting from their interview. Of course, the appellant was within her right in declining to take the witness stand, but there was no showing from any source that if she was not a Communist, the Government's representatives were so aware, or that she had not, in fact, done the things she told the agents she had done. The trial judge allowed extensive cross-examination of each of the Government's witnesses, indeed appellant was given extraordinary latitude. Control of cross-examination and its course is singularly within the discretion of the trier, and his rulings will normally be guided by the posture in which a particular problem arises, what foundation has been laid for the examining counsel's exploration, the nature of a proffer if any be offered as a basis for more extended examination, and similar factors. On the record here, we cannot say the trial judge abused his discretion.

The judge ordered the Government to turn over to appellant's counsel the reports, including the original teletype reports, by special agents Powers and Schildecker concerning their interviews with the appellant. The two F. B. I. men were cross-examined at length. As part of her case, appellant called the Assistant Director of the F. B. I., who, pursuant to appellant's *subpoena duces tecum*, had brought an F. B. I. file relating, in part, to the appellant. Appellant at once moved the admission "of all those records, for the purpose of showing that Mrs. Natvig has never been a member of the Communist Party." Upon the Government's objection, Judge Holtzoff said: "Is is irrelevant whether Mrs. Natvig was or was not a member of the Communist Party, and I am going to instruct the jury so at the proper time. The truth of the statements which she is alleged

to have made is not in issue in this case. The only issue in this case is whether she had made those statements, and whether she willfully swore or willfully denied under oath that she had made them * *."

The F. B. I. files having been excluded, appellant thereupon excused the witness, and now alleges the trial judge erred in that appellant's opportunity for more extensive cross-examination was curtailed. Assistant Director Belmont had not testified concerning the issues presented here. There was no showing that agents Powers and Schildecker had relied upon the Bureau's files, either for refreshing their recollection or otherwise.[4] The appellant already had, and had used, the material prepared by the special agents. Nor was there an attempt to show that reports in the Bureau file were contrary to what the special agents had testified, or that the Bureau's file was competent to establish Mrs. Natvig's Communist Party affiliation, or the lack of it, assuming such fact to be relevant.

■ Appellant urges that the trial judge erred in denying her motion for change of venue, based on publicity given to the case and on the composition of the jury which included seven Government employees. The trial judge carefully examined the prospective jurors on voir dire and discovered no evidence of prejudice in any degree. No showing to the contrary was made. No bias was attributable to any juror. The motion, addressed to the discretion of the trier, was properly denied, for there has been no abuse.[5]

■ Nor was there error in denying appellant's motion for continuance, submitted the day before trial, because of the absence of Powell due to a severe heart attack. Judge Holtzoff explored the situation fully and carefully in colloquy with counsel and otherwise. A court appointed physician reported Powell would be physically incapacitated for some four months. He would have been a Government witness. Even so, appellant not only had never questioned him in advance as to his possible testimony and made no showing as to what might have been expected of him, but she was granted the privilege of taking his testimony by deposition and failed to utilize the opportunity. All counts but count 4 involving Powell's testimony were dismissed before or during the trial, and as to that count, the testimony of Fitzpatrick and Leahy was received. In any event, appellant received a general sentence which covered her conviction of counts 7 and 8 in which F. B. I. agents were involved, not Powell. Since the sentence imposed did not exceed that which might lawfully have been imposed on any one count, appellant was not prejudiced in any event.[6]

We have examined other claims of error advanced by the appellant touching such matters as comment by the trial judge and rulings on evidence, with respect to none of which is there a showing of abuse of discretion or prejudicial error. Lacking substance, such claims require no further discussion.

■ It was overwhelmingly established that in February the appellant had perjured herself with respect to what she had said the previous September. The case therefore comes squarely with-

4. Cf. Goldman v. United States, 1942, 316 U.S. 129, 132, 62 S.Ct. 993, 86 L.Ed. 1322.

5. Dennis v. United States, 1948, 84 U.S. App.D.C. 31, 171 F.2d 986, affirmed 1950, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; Smith v. United States, 1950, 86 U.S. App.D.C. 195, 180 F.2d 775; Frazier v. United States, 1948, 335 U.S. 497, 69 S. Ct. 201, 93 L.Ed. 187; cf. United States v. Leviton, 2 Cir., 1951, 193 F.2d 848

certiorari denied, 1952, 343 U.S. 946, 72 S.Ct. 860, 96 L.Ed. 1350, and memorandum of Mr. Justice Frankfurter, rehearing denied, 1952, 343 U.S. 988, 72 S.Ct. 1079, 96 L.Ed. 1375.

6. Wanzer v. United States, 1953, 93 U.S. App.D.C. 412, 208 F.2d 45; Abrams v. United States, 1919, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173.

in United States v. Harris.[7] Finding no error, we affirm the conviction.[8]

Affirmed.

FAHY, Circuit Judge (concurring).

In concurring with Judge Danaher I add a few words in comment upon the dissent. It is not clear that the testimony which Judge Bazelon feels was erroneously admitted to the prejudice of the appellant should have been excluded even if objected to, because it was testimony by witnesses of statements made by appellant which included those allegedly perjurious and which were closely related to the latter in point of time. Since this testimony was not objected to, and the verdict has abundant support in the evidence, I do not think a new trial is required because of its reception, or because of a claim that the trial judge abused his discretion in not permitting cross-examination with respect to the truth of those statements, the truth of which was not in issue. Nevertheless, one might well express the hope for leniency toward appellant.

BAZELON, Circuit Judge (dissenting).

Appellant testified at the administrative hearing in October 1954 that, some twenty years earlier, she had been a member of the Communist Party and had known and dealt with Lamb as a Communist. Those were the bare bones of her story. In her testimony she adorned them with a diversity of details of political intrigue and sex. In February 1955, recalled as a witness, she declared that her previous testimony had been perjury and that she had been coerced into giving it by one of the Commission's attorneys.

To establish that the February testimony was false, the Government would have had to prove the details of the story of her Communist activities and her relations with Lamb. On the other hand, to establish that the October testimony was false, the Government would have had to disprove those same details.

But the Government adopted a course which made a choice unnecessary. It simply charged her with *falsely testifying that she had not made the following statements* to various Government agents before either of the hearings: (1) that she had been a member of the Communist Party during a certain period[1] and (2) that, in connection with her Communist activities during that period, she had met Lamb and associated and consorted with him. Thus the truth or falsity of the substance of the statements she denied making was irrelevant. The only question was whether her denial that she made them was false.

The testimony of the various agents that the statements were in fact made,

---

7. 1940, 311 U.S. 292, 295, 61 S.Ct. 217, 85 L.Ed. 196; and see opinion by Groner, C. J., in O'Brien v. United States, 1938, 69 App.D.C. 135, 99 F.2d 368.

8. Prior to charging the jury, Judge Holtzoff sought from defense counsel a statement of "precisely what issue" appellant wished the charge to define. Appellant's attorney replied: "Our primary defense is this, of course, Your Honor, that due to the entire way that the matter was handled, by the time she took the stand in February she was so confused that she didn't know what she was doing . . ."

\* \* \* \* \*

"The Court: Of course, you didn't introduce any medical testimony except medical testimony of her physical condition.

"Mrs. Dwyer: I might say, Your Honor, that we did have her consult with a psychiatrist in that respect, but that his report was [so?] inconclusive that we felt it didn't have probative value."

The judge was not requested to charge upon insanity as a defense, in fact the only exception taken to the charge had no bearing on this point. Appellant's brief to us speaks of her "emotional derangement (not, however, amounting to insanity) . . ."

Appellant was committed to the custody of the Attorney General for a period of eight months to two years. It is to be hoped and expected that a careful study will be made of the mental condition of this woman who so unfortunately involved herself.

1. According to Count IV, 1934–37; according to the other two counts, 1934–36.

if believed by the jury; would have been enough to prove the case. The agents did so testify. But, perhaps to lend the witnesses' testimony an air of greater verisimilitude, the Government extracted from them a wealth of irrelevant, but prejudicial, detail as to other and additional statements allegedly made by the appellant. Those details were spread through the testimony of four witnesses on several different days of the trial and, in addition, were specifically and forcefully restated to the jury in the Government's summation. This irrelevant evidence included the following: that appellant had said that she had attended Communist Party "strategy" meetings with Lamb; that she had met various named known Communists at such meetings; that plans were made at the meetings to recruit attractive young girls into the Communist Party to be used for proselytizing service-men; that these meetings had discussed the place of the Communist Party in the Farmer-Labor Convention and the role of the Party in founding the National Lawyers Guild; that she had attended the Farmer-Labor Convention in Chicago with Lamb; that she had attended a meeting with him in Washington concerning the founding of the National Lawyers Guild; that she was a delegate to the convention of the Teachers Union which was affiliated with the Communist Party; that she and Lamb had attended a breakfast where Norman Thomas was also present and that Thomas had refused to break bread with them; that Lamb, at cocktails one day, had taken out a map and had discussed with her the Communist Party's plans and strategy for the conquest of Asia and the domination of the world. In addition to such political intrigue, according to the Government witnesses, the appellant told them of her illicit sex relations with Lamb.

That this was prejudicial testimony is no longer open to question. " * * * it is now the generally accepted view that to write or speak of a person or an organization as being 'communist' or a 'communist sympathizer' is to subject such person or organization to public hatred, odium and contempt, to his immediate harm, and is therefore libelous per se. * * * In the temper of the times, the communist label is even more odious and defamatory than the pro-Nazi and pro-Fascist label of another day."[2] The admission of the testimony in evidence was error.

Whether this error was so plain and so prejudicial as to be before us on appeal even though the evidence was not objected to at the trial[3] or whether failure to object is of any significance in the face of the trial judge's view that the evidence would be admissible even over objection[4] are questions we need not decide.

If the admission in evidence of the irrelevant and highly prejudicial testimony is not ground for reversal, the refusal of the trial judge to allow appellant to rebut this testimony was such ground. The following colloquy is typical:

2. Utah State Farm Bureau Federation v. National Farmers Union Service Corp., 10 Cir., 1952, 198 F.2d 20, 23, 33 A.L.R. 2d 1186; see also cases there cited. And see Braden v. Commonwealth, Ky. 1955, 277 S.W.2d 7, 10: "A charge such as this well may be calculated to produce hysteria among the friends of accused and cause them to forsake him. It is a depressing thought but the fact is that at this time in our country's history it may be worth a man's reputation to attempt to assist a friend to raise funds for defense against a charge of sedition, especially where a question of communism is involved."

3. Rule 52(b), F.R.Crim.P., 18 U.S.C.A.; Tatum v. United States, 1951, 88 U.S. App.D.C. 386, 388–389, and note 3, 190 F.2d 612, 614–615.

4. The trial judge said: "Now, it is true that certain statements that were quoted by Mr. Powers [a Government witness] are not quoted in the indictment. I allowed them in the absence of objection. I would have overruled any objection on the theory that it is part of the res gestae, and the whole conversation is admissible."

The Court: * * * The issue of this case is whether she made a statement to the F B I, which she later testified she had not made.

Mr. Dwyer [Appellant's counsel]: Yes, sir.

The Court: Whether that original statement was true is immaterial. The only question is whether she made that statement. * * *

Mr. Dwyer: * * * [The Government] was allowed to bring in direct examination all about the Purple Cow in Cleveland, and the Communist activities. That isn't even in the indictment. I can't even bring it in myself to rebut it.

The Court: No. Again let's bear in mind what the channel is, and we have to stay within the channel. It is immaterial whether she was telling the truth or telling untruths. The question is, did she make those statements.

It is palpably unfair to allow a party to introduce evidence highly prejudicial to his adversary's cause and then to exclude the adversary's rebuttal.[5]

I would order a new trial.

---

5. Cf. Sun Printing & Publishing Ass'n v. Edwards, 2 Cir., 1902, 113 F. 445, 448: "But whether the evidence was competent in this view or not, it was admissible because the plaintiff, having opened the door and availed himself of its benefit, was foreclosed from precluding the defendant from its benefit. The testimony

given by the plaintiff was of a character likely to influence the jury, and we cannot doubt it was prejudicial to the defendant." See also McBoyle v. United States, 10 Cir., 1930, 43 F.2d 273, 275; Warren Live Stock Co. v. Farr, 8 Cir., 1905, 142 F. 116, 117; Ward v. Blake Mfg. Co., 8 Cir., 1893, 56 F. 437, 441.

I express no opinion as to whether appellant's counter-evidence should have been admitted on some theory related to entrapment or subornation, as urged by appellant, or as affecting the credibility of the Government's witnesses.