# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 4, 2008        Decided February 17, 2009

No. 07-3015

UNITED STATES OF AMERICA,
APPELLEE

v.

LINWOOD ASHTON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 06cr00173-01)

*Cheryl D. Stein* argued the cause and filed the brief for appellant.

*Joseph P. Cooney*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

Opinion concurring in the judgment filed by *Circuit Judge* ROGERS.

GRIFFITH, *Circuit Judge*: A jury convicted Linwood Ashton of unlawful possession of phencyclidine (PCP) with intent to distribute within 1000 feet of a school. Ashton appeals his conviction, arguing that two rulings of the district court improperly limited his ability to challenge the testimony of the arresting officer on which the government's case was built. Finding no error, we affirm the judgment of the district court.

**I.**

At around 4:30 p.m. on February 23, 2006, Metropolitan Police Department Officers Millard Pitts and Charles Johnson pulled over a light-colored Volkswagen in the 600 block of 7th Street NE, Washington, D.C., because they believed its heavily tinted windows were in violation of District of Columbia law. The stop occurred approximately 100 feet from Ludlow-Taylor Elementary School. As the officers approached the car, they smelled a strong chemical odor. Officer Pitts also recognized the car's driver, Linwood Ashton, whom he had recently arrested for driving without a license. The car's other occupant, Andre Cole, was in the front passenger seat. Officer Pitts told Ashton to show his license, but the best Ashton could muster was a "D.C. identification." Trial Tr. 153 (Oct. 18, 2006). At that point, the officers ordered Ashton and Cole to step out of the car.

While Ashton and Cole stood outside the car, Officer Johnson reached in from the passenger's side and grabbed a black bag off the front passenger-side floor. At just that moment, Officer Pitts, standing next to Ashton on the driver's side of the car, heard Ashton say, "That's mine, not his." *Id.*

at 154–55. Inside the bag, the officers found small vials containing a yellow liquid later identified as PCP residue. The officers placed both Ashton and Cole under arrest and, believing the vehicle might contain more narcotics, ordered a K-9 unit to the scene. The K-9 alerted the officers to the hatch of the car, where they found approximately 182 grams of PCP and a second black bag containing nearly 100 grams of marijuana. A later search of the area around the car's gearshift yielded six small Ziploc bags containing heroin. On June 15, 2006, a grand jury indicted Ashton on several counts, including unlawful possession of PCP with intent to distribute within 1000 feet of a school, unlawful possession of marijuana with intent to distribute within 1000 feet of a school, and unlawful possession of heroin.

Ashton's jury trial began in the district court on October 18, 2006. The government offered testimony from Officers Pitts and Johnson. Both described the circumstances of Ashton's arrest, and Officer Pitts told of Ashton's statement at the scene acknowledging as his the black bag Officer Johnson found on the front passenger-side floor of the car. In defense, Ashton presented the testimony of Christal Perry, who explained that she dated Ashton's cousin, Anthony McPhatter, a known drug dealer who had been shot and killed sometime before trial. It is unclear from Perry's testimony whether Ashton knew his cousin was a drug dealer. Perry did say, however, that Ashton often borrowed a silver Volkswagen owned by McPhatter. Perry also testified that she learned of Ashton's arrest from McPhatter. After work one day, she heard McPhatter say to someone on his cell phone, "[Ashton] got locked up in my car with my [drugs]." Trial Tr. 338 (Oct. 19, 2006). After the phone call, McPhatter told Perry directly, "[Ashton] got locked up with my [drugs]." *Id.*

On the second day of Ashton's three-day trial, defense counsel told the court for the first time that she wanted to call Detective David Adams as a witness. At the time of trial, Detective Adams was out on sick leave with pneumonia and unavailable to testify. Counsel knew Detective Adams's identity approximately two weeks before trial when she received a police document stating that Detective Adams had interviewed Ashton at the police station after his arrest and the interview had been videotaped. Ten days before trial, counsel learned that the video equipment had malfunctioned and no tape existed, but she made no attempt to secure Detective Adams's appearance at trial. Instead, she argued that the trial should be delayed until Detective Adams returned to health, citing Ashton's Sixth Amendment right to compulsory service.

According to what defense counsel argued to the district court, Detective Adams would testify that during his interview Ashton denied admitting to Officer Pitts that he owned any of the recovered contraband. Detective Adams would also testify that Ashton refused to answer any other questions he tried to put to him. *See id.* at 304 ("[Detective Adams] walked into the interrogation room and said, 'I understand you've already admitted possession of some of the drugs in the car.' And Mr. Ashton immediately said, 'No, I didn't. That's not true,' refused to waive any of his rights and submit to any interrogation."). From this proffer, counsel argued that a jury could infer that "it is not credible that [Ashton] made a confession on the scene, when he was completely unwilling to speak to anyone at the station and refused to waive his rights, and immediately repudiated that he had made the confession." *Id.* at 305.

Defense counsel also moved to admit into evidence Ashton's PD-47 "*Miranda* rights card," a document Ashton

signed at the police station that put into writing the invocation of his *Miranda* rights. Again, counsel claimed that Ashton needed this document to rebut Officer Pitts's testimony.

The district court denied both of Ashton's requests, stating, "[Y]ou've made your proffer" and "I'm not going to permit you to put the PD-47 in, and I'm not going to stop the trial until the officer gets well." *Id.* at 306.

On October 23, 2006, the jury returned verdicts of guilty on the PCP count and not guilty on the heroin count. The jury was unable to reach a unanimous verdict on the marijuana count. The district court sentenced Ashton to 97 months in prison followed by six years of supervised release. Ashton filed a timely appeal, claiming the district court's rulings violated his Fifth and Sixth Amendment rights. We have jurisdiction under 28 U.S.C. § 1291 (2000).

## II.

Ashton's appeal challenges the district court's exclusion of his *Miranda* rights card from evidence and its refusal to delay his trial to allow Detective Adams to testify. We review both rulings for abuse of discretion. *See United States v. Akers*, 702 F.2d 1145, 1149 (D.C. Cir. 1983) (reviewing district court's decision to exclude evidence for abuse of discretion); *United States v. Poston*, 902 F.2d 90, 96 (D.C. Cir. 1990) (reviewing district court's decision to deny a continuance for abuse of discretion). If we find error, we must then ask whether it was harmless. *See United States v. Whitmore*, 359 F.3d 609, 622 (D.C. Cir. 2004).

## A.

Ashton argues that the district court erred in excluding

his *Miranda* rights card from evidence. He contends that a jury could infer from the card that he would not have made an incriminating statement to the police at the scene of his arrest when later at the police station he refused to answer questions altogether.

We find no abuse of discretion in the district court's decision to exclude the *Miranda* rights card. Under the Federal Rules, evidence is admissible only to the extent that it is relevant. FED. R. EVID. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Ashton asserts that the *Miranda* card speaks to the probability that he admitted possession at the scene of his arrest. But the fact that Ashton invoked his *Miranda* rights only suggests that after he was transported to the police station and had time to consider his situation, he was unwilling to consent to custodial interrogation, at least without the presence of a lawyer. *See Miranda v. Arizona*, 384 U.S. 436, 471–72 (1966). In its *Miranda* jurisprudence, the Supreme Court has noted the significant difference in circumstance between a statement made in an "interrogation environment," like that in which Ashton found himself at the police station with Detective Adams, and a statement volunteered while only in police custody, like that made when Ashton was standing next to Officer Pitts. *See id.* at 457, 478; *see also Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Ashton's decision to invoke his *Miranda* rights is thus of no assistance in determining whether he made an unsolicited, spontaneous statement at the scene, and any number of reasons might explain Ashton's differing temporal propensities to admit possession. Accordingly, the district court had discretion to exclude the *Miranda* rights card on the

ground that it does not make the existence of any fact of consequence more or less probable.

We also find no abuse of discretion in the district court's failure to explain its reasons for exclusion. To be sure, it would have been better had the district court clarified the basis for its decision. But when the party offering evidence does not request that the court clarify its decision to exclude that evidence, a reviewing court will sustain the exclusion on any ground that the district court could have invoked. *See* 1 MCCORMICK ON EVIDENCE 260 (6th ed. 2006) ("When evidence is *excluded* upon a mere general objection, the ruling will be upheld, if any ground in fact existed for the exclusion. It will be assumed, in the absence of any request by the opposing party or the court to make the objection definite, that it was understood, and that the ruling was placed upon the right ground." (quoting *Tooley v. Bacon*, 70 N.Y. 34, 37 (1877))); *cf. United States v. Garrett*, 720 F.2d 705, 710 (D.C. Cir. 1983) ("It is well settled that 'in reviewing the decision of a lower court, [the decision] must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.'" (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)) (alteration in original) (internal quotation marks omitted)). The district court had discretion to find that the *Miranda* rights card was not relevant for determining the likelihood that Ashton confessed at the scene of his arrest, and thus it did not abuse its discretion in excluding the card from evidence.

**B.**

Ashton next argues that the district court erred in refusing to delay his trial so that he could secure the testimony of Detective Adams. Again, we are not persuaded.

"In short, '[a] trial judge enjoys great discretion in ruling on a motion for a continuance.'" *United States v. Gantt*, 140 F.3d 249, 256 (D.C. Cir. 1998) (quoting *Poston*, 902 F.2d at 96) (alteration in original).[1] In evaluating a criminal defendant's request for a continuance, trial judges must balance the right of an accused to have compulsory service for obtaining witnesses in his favor with the government's interest in seeing guilt or innocence promptly adjudicated. *United States v. Haldeman*, 559 F.2d 31, 83 (D.C. Cir. 1976). The ultimate question is whether a continuance is "reasonably necessary for a just determination of the cause." *Neufield v. United States*, 118 F.2d 375, 380 (D.C. Cir. 1941). Although "no firm rules can be articulated as to when a continuance is required," *Haldeman*, 559 F.2d at 83, we have found that trial judges should consider, among other things, (1) the defendant's diligence in attempting to secure the evidence before trial; (2) the length of the requested continuance and the associated burden on the government; and (3) the likelihood the evidence will be favorable and relevant to the defense. *See id.* at 83–84; *Neufield*, 118 F.2d at 380.

Applying these factors, we conclude that the district court was well within its discretion to deny Ashton's request. Defense counsel failed to make diligent efforts to secure Detective Adams's testimony before trial. Although Detective Adams was identified to Ashton as the interrogating officer approximately two weeks before trial, counsel first told the

---

[1] We note that Ashton did not file a formal motion for a continuance, but instead requested "an effort to find out when [Detective Adams] would be available . . . ." Trial Tr. 304 (Oct. 19, 2006). The district court responded, "I'm not going to stop the trial until the officer gets well." *Id.* at 306. It is unclear, however, how the court could have postponed trial without granting a continuance, and neither party has provided clarification. As such, we treat Ashton's request as equivalent to a motion for a continuance.

district court he was a necessary witness on the second day of Ashton's three-day trial. Prior to this time, counsel made no attempt to obtain the detective's testimony and explained to us at oral argument that she saw no need for diligence in ensuring the detective's presence because the government typically brings all relevant officers to trial. Oral Arg. Recording at 11:54–12:05. Without passing on the reasonableness of this assumption, we conclude that the district court had no obligation to make accommodations for counsel's defense strategy at the expense of delaying trial.

Defense counsel also made no showing of the length of the delay she needed to have Detective Adams testify. Rather, she requested two days into trial that there "be an effort to find out when [Detective Adams] would be available . . . ." Trial Tr. 304 (Oct. 19, 2006). Because Detective Adams would testify as a witness for the defense, the burden was on Ashton to find out when his attendance at trial was a possibility. Counsel responds, "How could I possibly know when a police officer with pneumonia is going to be ready to come back to court?" Oral Arg. Recording at 5:04. We suggest she ask.

Finally, Detective Adams's testimony is of little importance to "a just determination of the cause," *Neufield*, 118 F.2d at 380. As mentioned already, according to defense counsel, Detective Adams would first testify that Ashton refused to submit to interrogation at the station and then would say that Ashton denied admitting the bag was his. *See* Trial Tr. 304 (Oct. 19, 2006). Like the *Miranda* rights card, testimony that Ashton refused to talk with Detective Adams is simply not relevant. And again, Ashton is incorrect to argue there is a logical inconsistency between his confession at the scene and his denial at the stationhouse. One can think of many reasons why Ashton would deny admitting ownership

of the drugs at the police station after coming to grips with the ramifications of his statement to Officer Pitts at the scene of his arrest.

Ashton's alleged out-of-court denial, which defense counsel wanted to present through Detective Adams, would have added little to Ashton's case because it is unreliable. After Officer Pitts testified to the admission at the scene, Ashton was given the opportunity to conduct cross-examination. The jury could consider Officer Pitts's credibility and demeanor and determine whether he was telling the truth. But suppose Detective Adams testified to Ashton's statement at the police station. The jury could not examine Ashton's demeanor at the time the statement was made and assess whether Ashton was telling the truth. The best way to determine whether Ashton did in fact make an admission at the scene was to do what the district court did here: allow cross-examination of Officer Pitts, allow Ashton to examine Officer Johnson, and allow Ashton to testify on his own behalf.

## III.

For the foregoing reasons, we hold that the district court did not abuse its discretion in excluding Ashton's *Miranda* rights card or in refusing to delay his trial so that he could present the testimony of Detective Adams. The judgment of the district court is

*Affirmed*.

ROGERS, *Circuit Judge*, concurring in the judgment: I write to emphasize the limits of the court's holding that the district court did not abuse its discretion in denying a mid-trial continuance to await Officer Adams's testimony and in denying admission of the *Miranda* rights card into evidence.

As appellant presents his appeal, he posits a tension between his fundamental right to present a defense and the district court's discretion to control its calendar and to determine whether evidence is relevant. That tension is not dispositive here.

The Supreme Court explained in *Washington v. Texas* that:

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. 14, 19 (1967); *see In re Oliver*, 333 U.S. 257, 273-74 (1948). At the same time, the district court enjoys broad discretion regarding the manner in which a trial shall proceed. *See, e.g.*, *United States v. Gantt*, 140 F.3d 249, 256 (D.C. Cir. 1998); *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) (citing Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 SYRACUSE L. REV. 635 (1971)). This court's review of the district court's determination whether evidence is relevant is confined to assessing whether there was an abuse of discretion, *see United States v. Earle*, 375 F.3d 1159, 1162 (D.C. Cir. 2004), as is review of the district

court's denial of continuance of a trial, *United States v. Poston*, 902 F.2d 90, 96 (D.C. Cir. 1990).

Given appellant's theory of defense, it was within the district court's discretion to conclude that neither the officer's testimony nor the rights card were irrelevant and that each piece of evidence could have bolstered appellant's denial of making an on-the-scene confession. Had appellant been allowed to proceed as he requested, Officer Adams would have testified, according to defense counsel's proffer, that appellant denied making an on-the-scene confession. Appellant then could have argued to the jury that his action in not signing the rights card was consistent with his denial.

On the other hand, as regards Officer Adams, appellant cannot show an abuse of discretion in the refusal to delay trial based on a request made on the second day of a three-day trial, given defense counsel's patent lack of diligence, including failing to alert the district court of the need for the officer's testimony in advance of trial. Even were defense counsel's lack of diligence insufficient to support the denial of the continuance, which it is not, *see Natvig v. United States*, 236 F.2d 694, 698 (D.C. Cir. 1956), the record shows appellant was not deprived of the opportunity to present his defense by other means. Given the relatively minimal probative value of Officer Adams's proposed testimony, its exclusion, assuming error, was not prejudicial, *id.* Similarly, as to the rights card, appellant cannot show an abuse of discretion in the denial of its admission given "the narrow purpose the evidence would have served," *United States v. Bailey*, 319 F.3d 514, 519 (D.C. Cir. 2003). Appellant had the opportunity to cross examine the officers regarding the on-the-scene confession he denied making, and given the card's minimal probative value for purposes of supporting that denial, appellant cannot show, assuming error, prejudicial error. *See id.* Any error was harmless under either a constitutional or non-

constitutional standard. *See Chapman v. California*, 386 U.S. 18, 24 (1967); *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946).

So understood, appellant cannot show the district court abused its direction much less that, assuming error, he was prejudiced. Consequently, this case presents no occasion for the court to speculate on how a jury would, in fact, have viewed the proffered evidence, Op. at 6, 9-10, or to impose a burden on defense counsel to seek a statement of reasons from the district court for its decision to exclude the evidence, Op. at 7. Such a burden is unsupported by the cited precedent regarding "mere general objection[s]," Op. at 7 (quoting MCCORMICK ON EVIDENCE 260 (6th ed. 2006)), as counsel here stated reasons for seeking admission of the evidence.